```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                                                            :
BANKRUPTCY TRUST OF GERARD                                  :
SILLAM and GERARD SILLAM,                                   :
                                                            :
                            Plaintiffs,                     :    05 Civ. 10072 (GEL)
                                                            :
        -against-                                           :    OPINION AND ORDER
                                                            :
REFCO GROUP, LLC et al.,                                    :
                                                            :
                            Defendants.                     :
                                                            :
------------------------------------------------------------x
```

Ryan G. Blanch and Michael P. Kushner, The Blanch Law Firm, New York, New York, for Plaintiffs.

Jeffrey T. Golenbock and Adam C. Silverstein, Golenbock Eiseman Assor Bell & Peskoe LLP, New York, New York, for Defendants Phillip R. Bennett and Refco Group Holdings, Inc.

Greg A. Danilow, Robert F. Carangelo, and Anthony J. Albanese, Weil, Gotshal & Manges LLP, New York, New York, for Defendants Thomas H. Lee Partners, L.P., Thomas H. Lee Equity Fund V, L.P., Thomas H. Lee, Scott A. Schoen, Scott L. Jaeckel, David V. Harkins, Leo R. Breitman, Ronald L. O'Kelley, and Nathan Gantcher.

GERARD E. LYNCH, District Judge:

On November 4, 2005, plaintiffs filed the above-captioned action against thirty-nine defendants in New York state court. On November 29, 2005, the action was removed to federal court and referred to this Court as related to In re Refco, Inc. Securities Litigation, 05 Civ. 8626. Defendants Phillip R. Bennett and Refco Group Holdings, Inc. ("RGHI," and together with Bennett, the "Bennett Defendants"), and Thomas H. Lee Partners, L.P. ("THLP"), Thomas H.

Lee Equity Fund V, L.P. ("Fund V"), Thomas H. Lee, Scott A. Schoen, Scott L. Jaeckel, David V. Harkins, Leo R. Breitman, Ronald L. O'Kelley, and Nathan Gantcher (collectively the "Outside Directors," and together with THLP and Fund V, the "THLP Defendants") now move to dismiss plaintiffs' complaint. For the following reasons, defendants' motions will be granted.

**BACKGROUND**

I. Plaintiffs' Allegations

On a motion to dismiss, the Court must accept as true the facts alleged in plaintiffs' complaint. Jackson Nat'l Life Ins. Co. v. Merrill, Lynch & Co., 32 F.3d 697, 699-700 (2d Cir. 1994). In the instant matter, plaintiffs allege that the following events give rise to their claims.

On September 1, 1997, Sillam entered into a contract with Refco Overseas Limited, through its agent and director Halim Saad, pursuant to which Sillam would introduce the Refco Group[1] to Imad Lahoud of Investment Management Services ("IMS") (the "1997 Contract"). (Compl. ¶ 21.) The introduction occurred at a business lunch and meeting in Lahoud's office on the same day the contract was made. (Id. ¶ 20.)

During the two years following the introduction, IMS and Refco SA, a French affiliate of the Refco Group, developed a significant business relationship that eventually resulted in the formation of a venture between various entities controlled by Lahoud and various Refco affiliates. (Id. ¶¶ 22-39.) Sillam was not informed of these business dealings between Lahoud

---

[1] The complaint often uses the term "Refco Group" to refer to "the group and/or network of subsidiaries affiliated to Refco Group Ltd LLC, the latter being the ultimate parent company." (Compl. ¶ 19.) This usage results in some ambiguity regarding which of the thirty-nine defendants are actually alleged to have engaged in certain conduct. In this opinion the Court will, whenever possible, distinguish between individual Refco-related entities. However, where the complaint uses the generic "Refco Group" the Court is forced to follow suit.

2

and the Refco Group, and instead learned about the venture through the media. (Id. ¶ 41.) Once he learned of the venture, Sillam contacted Saad at Refco Overseas Limited to inquire "how he could be set aside from the negotiations between Imad Lahoud and the Refco Group while he was entitled to commissions on relevant operations completed by IMS and its successors." (Id. ¶ 42.) Saad responded that the purported 1997 Contract was "null and void." (Id. ¶ 43.)

Based on Saad's response, Sillam realized that the Refco Group was not going to fulfill its obligations under the 1997 Contract. (Id. ¶ 44.) Therefore, on October 16, 2000, and pursuant to French procedure, Sillam formally summoned Lahoud to explain the relationship between IMS, its successors, and the Refco Group, and the extent of Sillam's rights under the 1997 Contract. (Id. ¶ 45.) Lahoud responded on November 10, 2000, stating that all of the activity between Lahoud and Refco-related entities occurred as a result of Sillam's introduction, and that therefore Sillam was entitled to payment under the 1997 Contract.

On November 6, 2000, Sillam wrote to defendant Bennett, who referred Sillam's complaints to "general counsel"[2] for review. (Id. Ex. G.) On November 10, Sillam forwarded to Bennett a copy of Lahoud's response, which, plaintiffs claim, "strongly supported and evidenced . . . Sillam's rights to commissions" under the 1997 contract. (Id. ¶ 48.)

Two weeks later, Refco SA and SNC Refco Securities entered into a merger agreement whereby SNC Refco Securities agreed to merge into Refco SA. (Id. ¶ 49.) Sillam alleges that this merger was effected to frustrate his claims, that it "made it hard and problematic to

---

[2] Plaintiffs' brief states that Bennett referred Sillam's letter to Simmons & Simmons, general counsel for the Refco Group Limited, LLC. (Pl. Mem. 7.) However, neither the complaint nor Bennett's letter provides this information. Therefore, the Court will adopt the language of Bennett's letter, which simply states that the matter was referred to "our general counsel."

accurately calculate the amount of the commission payable to [him]" (id. ¶ 59), and that it resulted in a breach of contract (id. ¶ 111).³

In December 2000, Sillam was contacted by Dennis Klejna, general counsel for Refco Group Ltd, LLC, who requested that Sillam meet with representatives from the French affiliate of the Refco Group to discuss a settlement of Sillam's claims relating to the 1997 contract. (Id. ¶ 50.) On December 21, 2000, Sillam met with counsel for the Refco Group, thinking that the purpose of the meeting was to engage in good faith settlement discussions. (Id. ¶ 54.) However, plaintiffs allege that the Refco Group did not make any serious offers of settlement at the meeting, and instead used the meeting to obtain information regarding Sillam's potential claims and Sillam's knowledge of certain criminal proceedings pending against the Refco Group. (Id. ¶¶ 54-56.) Following this meeting, on January 10, 2001, Refco Overseas Limited sent a letter to Sillam rejecting all claims under the 1997 contract. (Id. ¶ 60, Id. Ex. K.) Later in January, the Refco Group offered Sillam a $50,000 settlement, which he rejected as "frivolous." (Id. ¶ 61.)

Based on the foregoing allegations, the present complaint asserts four causes of action. Count One (fraud) alleges that the Refco Group and Saad committed fraud through various misrepresentations in connection with the formation of the 1997 Contract, and that "[j]ustice requires that Refco Group, Phillip Bennett and Halim Saad be held accountable for the Refco Group's fraud." (Id. ¶ 97.) Count Two (fraudulent misrepresentation) alleges that the Refco Group organized the merger between Refco SA and SNC Refco Securities to defraud Sillam, and

---

³ Plaintiffs' brief does not explain the significance of the timing of this merger. However, the allegation regarding Sillam's letters to Bennett (Compl. ¶ 48) is immediately followed by the allegation regarding the merger (id. ¶ 49). This juxtaposition seems to suggest an implicit allegation that Bennett, having become aware of the purported strength of Sillam's claims, quickly attempted to thwart or frustrate those claims through the merger.

that the Refco Group made false representations to Sillam to induce him to engage in the December 21, 2000, settlement conference. (Id. ¶ 103.) Count Three (tortious interference with contract) alleges that the 1997 Contract was a valid contract between Sillam and Refco Overseas Limited and Refco SA, and that Refco Group Limited interfered with the 1997 contract by effecting the merger between Refco SA and SNC Refco Securities and intentionally causing the breach. (Id. ¶ 112.) Count Four (unjust enrichment) alleges that defendants Refco Group Ltd LLC, Refco LLC, and Refco Overseas Ltd were enriched at Sillam's expense due to Sillam's introduction of Lahoud to the Refco Group, which resulted in significant benefit to the Refco Group. (Id. ¶¶ 119-139.) On each count, plaintiffs request $80 million in compensatory damages, and three times that amount in punitive damages. On Count Three for tortious interference with contract, plaintiffs additionally claim damages resulting from "intense emotional distress" in the amount of $70 million. (Id. ¶ 116.)[4]

II. Procedural History

This is not the first action plaintiffs have filed in connection with the events described above. On September 8, 2004, Sillam filed a pro se action against Refco Group Ltd, LLC and Phillip Bennett in New York state court ("Sillam I"). (Pierce Decl. Ex. B, Doc. #48 [hereinafter Sillam I Compl.].) On October 12, 2004, Bennett removed Sillam I to the Southern District of New York. (See 04 Civ. 8009 (BSJ), Doc. #1.) Two weeks earlier, on September 28, 2004, Sillam learned that due to an order of a French court in connection with French bankruptcy proceedings, he no longer had the capacity to sue on his own behalf in any legal action for

---

[4] Sillam was not a stockholder of Refco, Inc., and so he asserts no claims under the securities laws such as those asserted by the plaintiffs in In re Refco, Inc. Securities Ligitation, 05 Civ. 8626.

5

pecuniary losses. (Compl. ¶ 9.) Accordingly, on November 9, 2004, Sillam voluntarily dismissed the action. (See 04 Civ. 8009 (BSJ), Doc. #4; see also Pierce Decl. Ex. C, Doc. #48.)

After dismissing Sillam I, Sillam filed another pro se action in New York state court on September 16, 2005 ("Sillam II"). (Pierce Decl. Ex. D, Doc. #48 [hereinafter Sillam II Compl.].) The complaint in Sillam II was brought by the Bankruptcy Trust of Gerard Sillam ("Bankruptcy Trust") with respect to all pecuniary losses, in accordance with the order of the French court, and by Sillam in his individual capacity with respect to his claim of mental damages. (Id. ¶ 13.) The defendants named in the complaint were Refco Group Ltd, LLC, Phillip Bennett, and Halim Saad. (Id.) On September 9, 2005, Bennett removed Sillam II to the Southern District of New York. (See 05 Civ. 8099 (LBS), Doc. #1.) After the removal, plaintiffs learned that the Bankruptcy Trust could not proceed pro se. (Compl. ¶ 14.) Accordingly, on October 6, 2005, the Bankruptcy Trust filed a notice of voluntary dismissal (Compl. ¶ 15), and the case was terminated on October 21, 2005.

The factual allegations in Sillam I and Sillam II mirror the allegations in the present action. (Compare Compl. ¶¶ 18-68, with Sillam I Compl. ¶¶ 8-58, and Sillam II Compl. ¶¶ 14-64.) All three complaints set out the same series of events, beginning with the formation of the 1997 Contract, and then continuing on to the business relationship between Lahoud and the Refco Group, Saad's statement that the 1997 Contract was null and void, Sillam's letter to Bennett, the merger agreement, and the settlement discussions. Additionally, both complaints assert the same four causes of action for fraud, fraudulent misrepresentation, tortious interference with contract, and unjust enrichment. (Compare Compl. ¶¶ 93-142, with Sillam I Compl. ¶¶ 59-98, and Sillam II Compl. ¶¶ 65-114.) In fact, the only significant difference between the

6

complaints in Sillam I and Sillam II and the complaint in the instant matter is the addition of the allegations in paragraphs 69 through 92 of the instant complaint, which relate to events leading up to Refco, Inc.'s August 2005 initial public offering.

**DISCUSSION**

I. The Motion to Dismiss

The Bennett Defendants and the THLP Defendants raise various arguments in support of their motions to dismiss. The THLP Defendants argue that they "had no affiliation with Refco at the time of the [1997 Contract]'s signing, or at the time of any of the subsequent business dealings that allegedly give rise to Plaintiffs' damages," and that all claims should therefore be dismissed with respect to them. (THLP Mem. 1.) The Bennett Defendants argue that plaintiffs did not sufficiently allege Bennett's personal involvement in any of the events on which their claims are based to support a claim against him personally, and that in any event plaintiffs fail to state a claim against either Bennett or RGHI. (Bennett Mem. 1-2.)

Plaintiffs present no substantive response to defendants' arguments. Instead, plaintiffs concede that Sillam cannot state a claim against any of the defendants, and argue that the Bankruptcy Trust should be allowed to amend the complaint, as the sole plaintiff, to assert a contract claim against Refco Group Limited, LLC, RGHI, Bennett, THLP, and Fund V. According to plaintiffs, hidden inside their fat, 147-paragraph, 28-page, four-count complaint – which asserts claims for fraud, fraudulent misrepresentation, tortious interference with contract, and unjust enrichment – there is a skinny contract claim struggling to get out, and once that claim is released, it will cure the current complaint's "defects." (Pl. Mem. 17.) Essentially, plaintiffs consent to the dismissal of the present complaint, but seek leave to amend the

complaint under Fed. R. Civ. P. 15(a). (See id. 16 n.6.)

Accordingly, as plaintiffs concede that the present complaint must be dismissed, defendants' motion is granted.

II. Plaintiffs' Request to Amend the Complaint

Generally, leave to amend "shall be freely given when justice so requires," Fed. R. Civ. P. 15(a), and our Court of Appeals has explained that:

> In the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. – the leave sought should, as the rules require, be "freely given."

United States ex rel. Mar. Admin. v. Cont'l Ill. Nat'l Bank & Trust Co., 889 F.2d 1248, 1254 (2d Cir. 1989). Plaintiffs' request, however, will be denied. Plaintiffs' failure to provide a proposed amended complaint inhibits the Court's ability to evaluate the merits of plaintiffs' proposed contract claim, and demonstrates the futility of such a claim against these defendants.

Plaintiffs do not formally move to amend the complaint pursuant to Fed. R. Civ. P. 15(a). Rather, they simply request leave to amend in their opposition brief. The fact that plaintiffs' request to amend was made informally in response to defendants' motions to dismiss is by itself ground for denying the request. In re Tamoxifen Citrate Antitrust Litig., 429 F.3d 370, 404 (2d Cir. 2005). However, while such a denial would be within the Court's discretion, that discretion will not be exercised here. In In re Tamoxifen, the plaintiffs' request was "buried" in a footnote, and therefore defendants were not provided with adequate notice or opportunity to respond. Here, plaintiffs' request to amend forms the entire basis of their response. Defendants not only could, but in fact *did* substantively oppose plaintiffs' request. In such circumstances, requiring a

8

separate motion would elevate form over substance, and would result in the filing of additional, useless paper.

Plaintiffs' second failure, however, is not so easily excused. Plaintiffs fail to provide the Court or defendants with a copy of the proposed amended complaint. Rule 7(b) requires that all motions "state with particularity the grounds therefore, and shall set forth the relief or order sought." Fed. R. Civ. P. 7(b)(1). In the context of a motion to amend, this command generally requires a movant to supply a copy of the proposed amendment. See Smith v. Planas, 151 F.R.D. 547, 550 (S.D.N.Y. 1993) ("In order to satisfy the prerequisite of particularity in a motion to amend, a complete copy of the proposed amended complaint must accompany the motion so that both the Court and the opposing parties can understand the exact changes sought."). Without an opportunity to review plaintiffs' proposed amended complaint, this Court is forced to rule on "a hypothetical amended complaint that neither the Court nor defendants [have] seen." Am. Tissue, Inc. v. Donaldson, Lufkin & Jenrette Securities Corp., 233 F.R.D. 327 (S.D.N.Y. 2005).

Plaintiffs state that they are unable to provide a copy of their proposed amendments because they are "not yet in a position to determine which [defendants] should be dismissed from the amended complaint," and because they are consulting with "French counsel" in an attempt to "determine which causes of action are being brought in the French civil proceeding so as to avoid duplicitous litigation." (Pl. Mem. 16 n.6.) Plaintiffs' newfound desire to reduce needless litigation is commendable, but it is too little, too late. Plaintiffs have already filed two prior actions in the United States based on the events here at issue, and this action is now effectively dismissed as well, to be replaced, if plaintiffs are permitted to amend their complaint, by yet

9

another claim, that would require yet another response by defendants, and presumably more motions to dismiss. Defendants have been subjected to plaintiffs' claims since 2004; they should not be forced to waste additional bullets by taking shots in the dark.

Plaintiffs argue that the complaint in this action was filed pro se, and that therefore the request to amend should be granted to effectively clean up the complaint. Indeed, plaintiffs were not initially represented by counsel, and pro se plaintiffs are generally given every opportunity to advance what could be a meritorious claim. However, plaintiffs' failings cannot be simply written off as the innocent mistakes of unsophisticated novices. The Bankruptcy Trust has been represented by counsel since February 3, 2006, two weeks before the defendants filed their motions to dismiss (Doc. ## 40, 41, 52). Nevertheless, plaintiffs did not notify defendants that they proposed to amend the complaint – an action that would have eliminated the need for defendants to expend time and expense addressing the four now-abandoned causes of action set forth in the current operative complaint.

Furthermore, to the extent plaintiffs had insufficient time for newly-retained counsel to review the complaint and determine a course of action, the Bankruptcy Trust has only itself to blame for waiting until February 3 to retain counsel in this matter. Plaintiffs have been aware since on or about the dismissal of Sillam II on October 6, 2005, that the Bankruptcy Trust, as an artificial entity, could not proceed pro se in this Court. (Compl. ¶ 14.) Plaintiffs' failure to provide a proposed amended complaint, in the two months after retaining counsel and the five months after arriving in this Court, can only be described as irresponsible. By sidestepping procedural requirements, plaintiffs have attempted to defeat defendants' motions by making vague representations regarding the claim they hope to assert, without the inconvenience of

10

actually having to formulate specific allegations to which they will be held. Plaintiffs' failure to provide an amended complaint has prevented the Court and defendants from properly evaluating their request to amend, and accordingly that request will be denied.

This conclusion becomes all the more evident when plaintiffs' request to amend is evaluated on the merits. The 1997 Contract is signed by Halim Saad on behalf of Refco Overseas Limited. (Compl. Ex. B.) None of the Bennett Defendants or THLP Defendants are mentioned anywhere in the document, and therefore the defendants argue that the 1997 Contract cannot form the basis of a breach of contract claim against *them* because they are not parties to the contract. Accordingly, defendants argue that it would be futile for plaintiffs to amend the complaint to state a contract claim.

Plaintiffs respond to both the Bennett Defendants and the THLP Defendants in turn. With respect to RGHI, plaintiffs assert that the company is bound by the 1997 Contract because Refco Overseas Limited bound its parent companies by its assent to the 1997 Contract. (Pl. Mem. 19.) With respect to Bennett, plaintiffs assert that he is bound by the 1997 Contract because he "acted outside the scope of his directorship." (Id.) With respect to the THLP Defendants, plaintiffs assert that by obtaining an ownership interest in the Refco Group Limited after the alleged formation of the 1997 Contract, the THLP Defendants "agreed to assume all liabilities of the company." (Id.)

Rather than supporting their request to amend, plaintiffs' arguments illustrate the significance of their failure to provide the Court with an actual proposed pleading. The present complaint contains no support for the claims the Trust indicates it wishes to make, and without a proposed pleading, the Court has no indication of what the Trust may allege that could cure the

present deficiencies. With respect to their proposed claim against RGHI, plaintiffs assert that Refco Overseas Limited bound its parent companies, but plaintiffs do not specifically allege that RGHI is in fact a parent company of Refco Overseas Limited. The Refco organizational chart provided by plaintiffs shows no parent-subsidiary relationship between the two companies. (Compl. Ex. A.) With respect to plaintiffs' proposed claim against Bennett, plaintiffs assert that Bennett's alleged misdeeds bind him to the 1997 Contract, but none of the misdeeds alleged in the complaint has any relation to the 1997 Contract, and plaintiffs offer no legal or factual argument for how Bennett's actions in connection with a 2005 IPO bear on whether he is bound by the 1997 Contract to which he was not a signatory. Finally, plaintiffs' allegation regarding the THLP Defendants provides the most egregious example of the consequences of their failure to provide a proposed amended complaint. Plaintiffs admit that to support their theory of the THLP Defendants' liability, "the amended complaint's factual allegations . . . will *significantly change* from the current complaint." (Pl. Mem. 19 n.11) (emphasis added). However, no hint is given regarding what these significant changes will be, or how they will establish defendants' assumption of liability under the 1997 Contract. Accordingly, the THLP Defendants have no way to defend against allegations that plaintiffs have not asserted or even sketched

At the time they filed their response, plaintiffs had been represented by counsel for more than two months. That is more than adequate time to marshal factual allegations sufficient to permit the Court to assess whether plaintiffs can assert a claim against these defendants. They have failed to do so (or to seek an extension of time to do so, had one been necessary). The only reasonable conclusion is that plaintiffs cannot make such allegations. Accordingly, amendment of the complaint to assert a breach of contract claim against defendants would be futile, and

12

plaintiffs' request to amend will be denied.

## CONCLUSION

The Bennett Defendants' motion to dismiss (Doc. #41) and the THLP Defendants' motion to dismiss (Doc. #52) are granted on consent, due to plaintiffs' concession that the present complaint is defective. Plaintiffs' informal request to amend the complaint is rejected based on plaintiffs' failure to provide a proposed amended complaint and the futility of plaintiffs' proposed claims.

SO ORDERED.

Dated: New York, New York
July 28, 2006

_____
GERARD E. LYNCH
United States District Judge